**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHARLES MATEY, | Civil Action No. |
| Plaintiff, | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| QUINTANA ENERGY SERVICES INC., CORBIN J. ROBERTSON, JR., CHRISTOPHER J. BAKER, DAG SKINDLO, GUNNAR ELIASSEN, ROCKY L. DUCKWORTH, DALTON BOUTTÉ, JR., and BOBBY S. SHACKOULS, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Charles Matey ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Quintana Energy Services, Inc. ("Quintana" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Quintana and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against Quintana and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company with KLX Energy Services Holdings, Inc. ("KLX"), Krypton Intermediate LLC ("Acquiror"), and Krypton Merger Sub, Inc. ("Merger Sub"). (the "Proposed Transaction").

2.      On May 3, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with KLX.  Pursuant to the terms of the Merger Agreement: (i) Merger Sub will merge with and into Quintana, with Quintana surviving as a wholly-owned subsidiary of KLX; and (ii) KLX will issue 0.4844 shares of KLX common stock to shareholders of Quintana common stock (the "Merger Consideration").

3.      On June 2, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading registration statement with the SEC on Form S-4 (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Quintana and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Quintana shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, the owner of Quintana shares.

9.      Defendant Quintana is incorporated under the laws of Delaware and has its principal executive offices located at 1415 Louisiana Street, Suite 2900, Houston, Texas 77002. The Company's common stock trades on the New York Stock Exchange under the symbol "QES."

10.     Defendant Corbin J. Robertson, Jr. ("Robertson") is and has been the Chairman of the Board of Directors of Quintana at all times during the relevant time period.

11.     Defendant Christopher J. Baker ("Baker") has been the Company's President, Chief Executive Officer and a director at all times during the relevant time period.

12.     Defendant Dag Skindlo ("Skindlo") is and has been a director of Quintana at all times during the relevant time period.

13.     Defendant Gunnar Eliassen ("Eliassen") is and has been a director of Quintana at all times during the relevant time period.

14.     Defendant Rocky L. Duckworth ("Duckworth") is and has been a director of Quintana at all times during the relevant time period.

15.     Defendant Dalton Boutté, Jr. ("Boutté") is and has been a director of Quintana at all times during the relevant time period.

16.     Defendant Bobby S. Shackouls ("Shackouls") is and has been a director of Quintana at all times during the relevant time period.

17.     Defendants Robertson, Baker, Skindlo, Eliassen, Duckworth, Boutté, and Shackouls are collectively referred to herein as the "Individual Defendants."

18.     The Individual Defendants, along with Defendant Quintana, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

19.     Quintana provides a wide range of completion, production and drilling services to land-based exploration and production customers operating in unconventional resource plays and conventional basins throughout the United States.  The Company operates through two segments, Completion and Production Services (CPS) and Drilling.

### The Company Announces the Proposed Transaction

20.     On May 3, 2020, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

4

WELLINGTON, Fla. and HOUSTON, May 03, 2020 (GLOBE NEWSWIRE) -- KLX Energy Services Holdings, Inc. ("KLXE") (NASDAQ: KLXE) and Quintana Energy Services, Inc. ("QES") (NYSE: QES) today announced that they have entered into a definitive agreement whereby the companies will combine in an all-stock merger transaction. The combined company will have an industry-leading, asset-light product and service offering present in all major US onshore oil and gas basins, with more than $1 billion of pro forma fiscal year 2019 revenue and approximately $106 million in fiscal year 2019 adjusted EBITDA, excluding an estimated $40 million of annualized cost synergies and a strong liquidity profile with approximately $118 million of cash[1] and a $100 million revolving credit facility.

Under the terms of the Merger Agreement, which has been unanimously approved by the Boards of Directors of both companies, QES shareholders will receive 0.4844 shares of KLXE common stock for each share of QES common stock (the "Exchange Ratio"). Upon closing, KLXE and QES shareholders will, respectively, own approximately 59% and 41% of the equity of the combined company on a fully diluted basis. The combined company will retain the KLX Energy Services corporate name, the listing will remain on Nasdaq under the ticker "KLXE" and the corporate headquarters will be moved to Houston, Texas.

Tom McCaffrey, President and CEO of KLXE, said, "QES will add directional drilling, snubbing and well control services to KLXE's already broad range of product and service lines ("PSLs"). We will be rationalizing two of the largest fleets of coiled tubing and wireline assets, which will dramatically reduce future capital spending requirements and which will facilitate the pull-through of KLXE's asset-light products and services. As QES has previously announced the idling of its capital-intensive frac business, we intend to repurpose the vast majority of the pressure pumping equipment to support what will become the largest fleet of large diameter coiled tubing assets in North America. Additionally, we will repurpose some of the pressure pumping equipment to support the wireline fleet, which will also be one of the largest in the US, and one of the largest independent providers of directional drilling services.

"KLXE has successfully demonstrated that the provision of coiled tubing services along with KLXE's broad range of asset-light products and services results in the addition of new customers as well as the capture of a greater share of customer spend. Fundamentally, this transaction allows the combined company to pursue what we know to be a successful, returns (ROIC)-focused strategy, while positioning the combined company to weather the current storm and ultimately, to grow on a significantly-reduced capital expenditure budget.

"We expect this transaction will also generate significant annualized cost synergies of at least $40 million within 12 months, which include substantial savings from the closure of KLXE's corporate headquarters in Wellington, Florida and the combination of both companies' Houston headquarters. In addition, KLXE's broad range of intervention services assures the combined company will be on the front end of the recovery," concluded McCaffrey.

John Collins, Chairman of the Board of KLXE, added, "It is our view that consolidation in the oilfield services industry is essential to remain cost-competitive in an environment where oil prices and demand may be depressed for an extended period. Our complementary operations and cultures and our shared commitment to customer satisfaction will provide us with an enhanced ability to serve our customers and to create value for shareholders."

Corbin J Robertson Jr., Chairman of the Board of QES, added, "We are pleased to announce the combination of these two strong companies and the resulting creation of a leading US onshore oilfield services company. We look forward to working with the KLXE Board and team, and we are excited about the value creation potential for all stakeholders."

Christopher J. Baker, President and CEO of QES, added, "We believe this combination affords us a first-mover advantage and positions the combined company not only to weather the current market dislocation but also to provide an industry-leading product and service offering across, and drilling solutions to, our blue-chip customer base. We are enthusiastic about the many financial and strategic merits of this merger, including the combined company's leading positions in many of its PSLs. This broadened suite of solutions will be extremely attractive to our customers who are all seeking to consolidate purchasing with trusted, high-quality service providers. Additionally, we believe that our downhole motor technology, vertical integration and in-house machining capacity within QES's drilling segment will serve to reduce KLXE's downhole tool costs and will allow for cross-pollination of motor and tool technologies to provide best-in-class reliability and performance
.
"The QES team and I look forward to combining with the team at KLXE. We share a strong culture of operational excellence and customer satisfaction, which will position us to generate long-term shareholder value," concluded Baker.

*     *     *

**Leadership, Governance and Headquarters**

Both KLXE and QES contribute highly experienced management teams with a significant track record of success. Chris Baker, President and CEO of QES, will be President and CEO. Tom McCaffrey, President and CEO of KLXE, will be a member of the Board of Directors of the combined company and will be Chairman the Integration Committee of the Board. Keefer Lehner, EVP and Chief Financial Officer of QES, will be EVP and Chief Financial Officer.

Upon closing of the transaction, the combined company's Board of Directors will consist of nine directors, five of whom will be from the legacy KLXE Board, including John Collins as Chairman, and four of whom will be from the legacy QES Board.

The combined company's corporate headquarters will be moved to Houston, Texas.

**Approvals and Closing**

The transaction has been unanimously approved by the Boards of Directors of both KLXE and QES. The merger is expected to close in the second half of 2020, following KLXE and QES shareholder approval and satisfaction of other customary closing conditions.

Archer Well Company Inc., Quintana Capital Group, L.P., Geveran Investments Limited and Robertson QES Investment LLC own approximately 75 percent of the outstanding shares of QES and have entered into a voting and support agreement to vote their shares in favor of the transaction.

**Advisors**

Goldman Sachs & Co. LLC served as exclusive financial advisor to KLXE and Freshfields Bruckhaus Deringer US LLP served as legal counsel.

Tudor, Pickering, Holt & Co. served as exclusive financial advisor to QES and Skadden, Arps, Slate, Meagher, & Flom LLP served as legal counsel.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

21.     On June 2, 2020, the Company authorized the filing of the Registration Statement with the SEC.  The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

22.     Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections

23.     The Registration Statement contains projections prepared by the Company's and KLX's management concerning the Proposed Transaction, but fails to provide material information concerning such.

24.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

25.     In order to make management's projections included in the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

26.     Specifically, for each set of projections prepared, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures in the Quintana 2020-2021 Recovery Cases as well as Quintana and KLX Downside Sensitivity Cases, including: (i) Adjusted EBITDA, (ii) Levered Free Cash Flow, (iii) Adjusted Operating Earnings/Loss, and (iv) Free Cash Flow;

27.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.  Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding TPH's Financial Opinion**

28.     The Registration Statement contains the financial analyses and opinion of Tudor Pickering Holt & Co Advisors LP ("TPH") concerning the Proposed Transaction, but fails to provide material information concerning such.

29.     With respect to TPH's Discounted Cash Flow Analysis of Quintana, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying TPH's selection of the discount rates ranging from 15% to 25% to the estimated future unlevered cash flows of QES; (ii) the estimates of unlevered free cash flow for Quintana for the years 2020 to 2023; (iii) the inputs and assumptions underlying TPH's terminal values for Quintana; (iv) the

estimated value of Quintana's future tax benefits; and (v) the number of fully diluted outstanding shares of Quintana.

30.     With respect to TPH's Discounted Cash Flow Analysis of KLX, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying TPH's selection of the discount rates ranging from 15% to 25% to the estimated future unlevered cash flows of KLX; (ii) the estimates of unlevered free cash flow for KLX for the years 2020 to 2023; (iii) the inputs and assumptions underlying TPH's terminal values for KLX; (iv) the estimated value of KLX's future tax benefits; and (v) the number of fully diluted outstanding shares of KLX.

31.     With respect to TPH's Discounted Cash Flow Accretion/Dilution Analysis, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying TPH's selection of the discount rates ranging from 15% to 25%; (ii) the estimates of unlevered free cash flow for Quintana for the years 2020 to 2023; (iii) the inputs and assumptions underlying TPH's terminal values for Quintana; (iv) the estimated value of Quintana's future tax benefits; and (v) the number of fully diluted outstanding shares of Quintana.

32.     With respect to TPH's Selected Publicly Traded Company Analysis, the Registration Statement fails to disclose: (i) basis for comparable companies; (ii) EV/2019A EBITDA for Basic Energy Services, Inc. and Superior Energy Services, Inc.; and (iii) EV/2020E EBITDA for Basic Energy Services, Inc. and Superior Energy Services, Inc.

33.     With respect to TPH's Liquidity Analysis, the Registration Statement fails to disclose how TPH forecasted for the combined company approximately $40.0 million of run-rate synergies with 50% benefit realized in the fourth quarter 2020 and 100% benefit realized thereafter, in addition to forecasted costs to achieve synergies of $34.0 million realized in the fourth quarter of 2020.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Goldman's Financial Opinion**

34.     The Registration Statement contains the financial analyses and opinion of Goldman Sachs & Co. LLC ("Goldman") concerning the Proposed Transaction, but fails to provide material information concerning such.

35.     With respect to Goldman's Illustrative Discounted Cash Flow Analysis of KLX, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying Goldman's selection of the discount rates ranging from 12.0% to 15.0%; (ii) the inputs and assumptions underlying Goldman's selection of the perpetuity growth rates ranging from 2.0% to 4.0%; (iii) the estimates of unlevered free cash flow for KLX for the years 2020 to 2023; (iv) the terminal values for KLX; (v) the estimated value of KLX's future tax benefits; and (vi) the number of fully diluted outstanding shares of KLX.

36.     With respect to Goldman's Illustrative Discounted Cash Flow Analysis of the pro forma company, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying Goldman's selection of the discount rates ranging from 12.0% to 15.0%; (ii) the inputs and assumptions underlying Goldman's selection of perpetuity growth rates ranging from 2.0% to 4.0%; (iii) the estimates of unlevered free cash flow for the combined company for the years 2020 to 2023; (iv) the synergies used in the analysis; (v) the terminal values for the combined company; (vi) the estimated value of the Company's future tax benefits; (vii) the combined company's net debt; and (viii) the number of fully diluted pro forma company shares.

37.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with

a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

38.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Merger

39.     The Registration Statement fails to disclose what consideration, if any, Quintana provided to Company A for entry into the exclusivity agreement executed on or about March 3, 2020.

40.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

43.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

44.     Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

45.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

46.     The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not

misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

47. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

48. The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

49. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of Quintana within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Quintana, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

55.     In addition, as set forth in the Registration Statement sets forth at length and

described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.      Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 12, 2020

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*